IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

RUTH STRAWDER,

        Plaintiff,

vs.                                        CASE NO. 1:10-cv-218-GRJ

MICHAEL J. ASTRUE,
Commissioner of Social Security

        Defendant.

_____/

## ORDER

Plaintiff appeals to this Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for a period of disability and disability insurance benefits pursuant to Title II of the Social Security Act.  (Doc. 1.) The Commissioner has answered (Doc. 7), and both parties have filed briefs outlining their respective positions.  (Docs. 10 & 13.)  The parties have consented to have the undersigned, a U.S. Magistrate Judge, conduct all proceedings in this case.  (Docs. 11, 12.)  For the reasons discussed below, the Commissioner's decision is **AFFIRMED**.

## I. PROCEDURAL HISTORY

Plaintiff protectively filed an application for benefits on May 9, 2007, alleging a disability onset date of January 11, 2007 due to carpal tunnel syndrome.  (R. 32, 80-84.)  These applications were denied initially and upon reconsideration.  (R. 32, 25-46, 115-118, 128-131.)  Plaintiff timely pursued her administrative remedies available before the Commissioner and requested a hearing before an Administrative Law Judge

("ALJ") (R. 51.)  A hearing was held before ALJ Deborah A. Arnold on December 7, 2009, and the ALJ denied Plaintiff's claims in a decision dated February 16, 2010. (R. 29-41.)  The Appeals Council denied Plaintiff's request for review on September 20, 2010, rendering the ALJ's decision the Commissioner's final decision.  (R. 1-3.)  On November 4, 2010, Plaintiff filed the instant appeal to this Court.  (Doc. 1.)

## II.  STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[1] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[2]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[3] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[4]

---

[1] See 42 U.S.C. § 405(g) (2000).

[2] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); accord, Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[3] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[4] Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.[5]

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[6]  The impairment must be severe, making Plaintiff unable to do his previous work, or any other substantial gainful activity which exists in the national economy.[7]

The ALJ must follow five steps in evaluating a claim of disability.[8]  First, if a claimant is working at a substantial gainful activity, he is not disabled.[9]  Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled.[10]  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is

---

[5] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[6] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505 (2005) (All further references to 20 C.F.R. will be to the 2005 version unless otherwise specified.).

[7] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[8] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[9] 20 C.F.R. § 404.1520(b).

[10] 20 C.F.R. § 404.1520(c).

disabled.[11]   Fourth, if a claimant's impairments do not prevent him from doing past

relevant work, he is not disabled.[12]   Fifth, if a claimant's impairments (considering his

residual functional capacity ("RFC"), age, education, and past work) prevent him from

doing other work that exists in the national economy, then he is disabled.[13]

The burden of proof regarding the plaintiff's inability to perform past relevant

work initially lies with the plaintiff.[14]   The burden then temporarily shifts to the

Commissioner to demonstrate that "other work" which the claimant can perform

currently exists in the national economy.[15]   The Commissioner may satisfy this burden

by pointing to the Medical-Vocational Guidelines (the "Grids") for a conclusive

determination that a claimant is disabled or not disabled.[16]

However, the ALJ should not exclusively rely on the Grids when "the claimant

has a non-exertional impairment which significantly limits his or her basic work skills or

---

[11] 20 C.F.R. § 404.1520(d).

[12] 20 C.F.R. § 404.1520(e).

[13] 20 C.F.R. § 404.1520(f).

[14] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987); see also Doughty v. Apfel, 245 F. 3d 1274, 1278 (11th Cir. 2001).

[15] Doughty, 245 F.3d at 1278 n.2. In Doughty the court explained this burden shifting as follows:

In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform.  In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.) (Internal citations omitted).

[16] Walker, 826 F.2d at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.").

when the claimant cannot perform a full range of employment at the appropriate level of exertion."[17]  In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[18]

The ALJ may use the Grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[19]  Such independent evidence may be introduced by a Vocational Expert's ("VE") testimony, but this is not the exclusive means of introducing such evidence.[20]  Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.

## III.  SUMMARY OF THE RECORD

### A.    Personal Background

Plaintiff was born in August 1948 and reported a high school education plus some college.  (R.80, 110.)  She alleged disability beginning January 11, 2007, due to carpal tunnel syndrome.  (R.32.)  Plaintiff's past work experience was in the financial aid department of a state university from 1972 until her retirement in 2007.  (R.107.)

---

[17] Wolfe v. Chater, 86 F.3d 1072, 1077 ( 11th Cir. 1996). *See* Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker, 826 F.2d at 1003 ("The grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation.").

[18] Walker, 826 F.2d at 1003.

[19] Wolfe, 86 F.3d at 1077-78.

[20] *See id.*

*Case No. 1:10-cv-218-GRJ*

Plaintiff works occasionally as an examination proctor, up to three hours per month. (R.13.)  A vocational expert testified at the hearing that Plaintiff's past relevant work was as a Job Development Specialist.  (R. 21.)

### B.   Evidence in the Record

On March 17, 2006, Plaintiff was evaluated for stenosis and tenosynovitis of the middle finger of her right hand.  (R. 163.)   She was referred to The Orthopaedic Institute for further evaluation and management.  Plaintiff presented to Dr. Jason J. Rosenburg on March 23, 2006, complaining of pain in her right hand for the past two years.  The pain had become worse in the past several months and was predominant in the right middle, index, and thumb.  Plaintiff complained that the pain sometimes awoke her at night but rubbing her hand would improve her symptoms. On physical examination, Dr. Rosenburg noted a small limitation of DIP flexion of the middle finger of the right hand but otherwise complete flexion and extension of both hands.  Plaintiff had a negative Tinel's sign, negative pressure provocative, and negative Phalen's test. Dr. Rosenburg opined that carpal tunnel was the likely cause of her pain.  He ordered an EMG, vitamin B6, wrist splints, and anti-inflammatories.  (R. 175-176.)

Plaintiff followed up with Dr. Rosenburg on April 25, 2006.  She reported that her symptoms were "much improved" with the nonsteroidals and exercises previously prescribed.  She was full duty at work. (R. 174.)  On May 23, 2006, Plaintiff complained of symptoms that would wake her up at night.  She did not want to pursue surgery but wanted to continue with nonsteroidals.  (R. 173.)  At her August 15, 2006 follow up with Dr. Rosenberg, Plaintiff reported that her symptoms had improved as a result of taking

vitamin B6 and using a right wrist splint.  She was placed at MMI and given a 0% impairment rating.  Plaintiff declined surgery.  (R. 172.)

On October 19, 2006, Plaintiff reported that she had benefitted from a change in her  job which required less typing.  Dr. Rosenberg advised Plaintiff that even though her EMG did not show evidence of carpal tunnel, "a significant percentage of people with clinical symptoms will not have electrodiagnostic findings."  Plaintiff declined surgery.  Plaintiff had good range of motion and reported benefits from using wrist splints.  (R. 171.)  On November 7, 2006, Plaintiff reported that the right wrist splint and physical therapy were helpful.  She did not want surgery.  (R. 170.)  At her April 12, 2007 visit, Plaintiff complained of continued pain in both hands.  She was not interested in surgical intervention but reported that her wrist splint, Motrin, and therapy were helpful.  Her work status remained at full duty.  (R. 169.)

On May 14, 2007, Plaintiff alleged in a disability report that she had pain in her hands and could not sleep or pick things up.  (R. 102-111.)  A June 8, 2007 pain questionnaire completed by Plaintiff disclosed that she experiences continuous pain in both wrists and that she has difficulty fastening her clothing, tying shoes, and grasping objects.  At times Plaintiff cannot write or type and has difficulty holding pots and pans. She treats her pain with Ibuprofen, hot and cold compresses, physical therapy, hand exercises, and wrist splints.  Plaintiff stated that she cannot clean the house or do laundry and gets someone else to do it.  She needs assistance dressing and gets her family to drive for her.  (R. 112-114.)

On September 6, 2007, Plaintiff's physician, Dr. Innocent Odocha, noted that she

did not get any significant relief from her pain with physical therapy.  Dr. Odocha
recommended another nerve conduction study and referral to orthopedic surgery.  (R.
196.)  On January 15, 2008, Plaintiff complained of continued severe pain in her hands
and wrists.  Dr. Odocha advised continued use of wrist splints and addition of Elavil.
(R. 201.)  Plaintiff had the same complaints at her March, June, and December 2008
follow up visits with Dr. Odocha.  (R. 202-204.)  Dr. Odocha's records from April 2006 to
December 2008 document 5/5 muscle strength in all distal and proximal muscle groups.
(R. 196-211.)

     In April 2009, Plaintiff completed a function report wherein she stated that she
has difficulty dressing and feeding herself.  She prepares her own meals and did
cleaning as well as some laundry.  She cannot do yard work.  Plaintiff reported that she
drives a car and shops in stores, though she shops with others to help with lifting.
Plaintiff stated she cannot lift anything heaver than one pound.  (R. 132-139.)

     Dr. Eftim Adhami examined Plaintiff on July 18, 2009.  His findings included 5/5
muscle strength in all muscles, even after repetitive movements; the ability to pick up
small objects and button clothes is preserved; joints are free in movement, without
signs of inflammation or fluid; full range of motion in hands; 5/5 grip strength; and
negative Tinel's sign in both wrists.  Dr. Adhami diagnosed Plaintiff with sensory carpal
tunnel syndrome, generally stable under current treatment.  (R. 223-224.)

     State agency consultant William Williford completed a physical residual
functional capacity assessment in July 2007, finding that Plaintiff could occasionally lift
20 pounds; frequently lift 10 pounds; stand, walk, or sit for about 6 hours in an 8-hour

workday; and had pushing and pulling limitations with her upper extremities.  (R. 177-184.)  State agency physician Dr. John E. Long assessed the same RFC in December 2007, but with some limitations on crawling and climbing ladders, ropes, or scaffolds.  (R. 185-192.)  State agency physician Dr. David Guttman opined on August 25, 2009 that Plaintiff could occasionally lift 20 pounds; frequently lift 10 pounds; stand, walk, or sit for about 6 hours in an 8-hour workday; and had no limitations in pushing or pulling.  Plaintiff could occasionally climb ladders, ropes, or scaffolds.  (R. 230-237.)

     **C.**   <u>**Hearing Testimony**</u>

     Plaintiff was 61 years old at the time of the December 7, 2009, hearing.  She testified that she completed two years in junior college and was currently working periodically proctoring exams, from 0-3 hours per month.  Until 2007, Plaintiff was a financial aid coordinator at the University of Florida.  She specialized in student employment, helping students find jobs.  (R. 13.)  Plaintiff worked in the financial aid department for 35 years until her retirement.  She lives in a mobile home with her husband and 16-year-old grandson.  Plaintiff testified that she tries to cook the meals, sometimes cleans, but never does yard work.  Her hobbies are singing, shopping, traveling, and reading.  (R. 14.)   She is right-handed, and although her orthopedist suggested several times that she have surgery on her wrist, she declined because she would not be able to use her hands for a period of time and she did not know who would take care of her.  Both of her hands bother her.  Plaintiff testified that she has trouble lifting things–even a plate–and has dropped dishes several times because they have slipped out of her hands.  She can lift less than a pound comfortably.  She does

not have trouble dressing, but takes her time.  (R. 15.)  Plaintiff uses splints on her hands every night.  She keeps them on during the day if the pain becomes unbearable. Almost any activity around the house makes the pain worse.  Plaintiff testified that she drives.  (R. 16.)

Plaintiff considered continuing working after she retired, but the pain became unbearable because at work she had to use the computer frequently to enter payroll information and student data.  (R. 16-17.)  Other tasks at her job that bothered her were writing and typing.  When writing a document, she would need to stop and massage her hands and then finish the task.  (R. 17.)  She tried not to miss deadlines and with the help of staff did not miss deadlines.  Plaintiff testified that she had problems with fatigue and that during the last two years she worked at the university she would have to sit in her office with her eyes closed or sit in her car for 15-20 minutes, 2-3 times a day, which cut down on her productivity.  She said that no one else noticed problems with her productivity.  (R. 18.)   Prior to retiring, Plaintiff would stay out of work for 2-3 weeks at a time due to pain.  (R. 19.)

Donna Mancina, a vocational expert, also testified at the hearing.  She testified that Plaintiff's past job would be classified as a job development specialist, DOT number 166.267-034, a sedentary, skilled position.  (R. 21.)  The ALJ asked the VE to assume whether an individual with the following limitations could perform the job development specialist position: occasionally lifting 20 pounds, frequently lifting 10 pounds; sitting, standing, and walking throughout the workday; occasionally pushing or pulling with the upper extremities; occasionally climbing ladders or ropes; occasionally

crawling; and only occasional concentrated exposure to vibration.  The VE testified that

an individual with those limitations could perform the job and that even if the individual

was further limited to frequent but not continual handling and fingering, he or she could

perform the job as performed in the national economy.  The VE testified that if an

individual was absent from work a week per month, that would eliminate all work.  (R.

22.)

      **D.**     **Findings of the ALJ**

      The ALJ determined that Plaintiff met the insured status requirements of the

Social Security Act through December 31, 2012.  She further determined that Plaintiff

had not engaged in substantial gainful work activity since January 11, 2007. (R. 34.)

The ALJ found that Plaintiff had the following severe impairment: carpal tunnel

syndrome.  The ALJ went on to find at step three of the sequential evaluation that

Plaintiff did not have an impairment or combination of impairments that met or medically

equaled one of the listed impairments.  (R. 35.)

      With respect to Plaintiff's residual functional capacity at step four of the

sequential evaluation, the ALJ determined that Plaintiff retained the RFC to perform

light work: occasionally lifting 20 pounds, frequently lifting 10 pounds; sitting, standing,

and walking throughout the workday; occasionally pushing or pulling with the upper

extremities; occasionally climbing ladders or ropes; occasionally crawling; only

occasional concentrated exposure to vibration; and frequent but continuous handling

and fingering.  (R. 35.)  The ALJ concluded that Plaintiff's medically determinable

impairments could reasonably be expected to produce some of Plaintiff's alleged

symptoms but that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not credible to the extent they conflicted with the ALJ's residual functional capacity assessment.  (R. 37.)  The ALJ noted that Plaintiff refused surgery and was returned to work on full status.  The ALJ gave great weight to the opinions of consultative examiner Dr. Adhami and state agency physicians Dr. Long and Dr. Guttman.

The ALJ concluded at step four that Plaintiff was able to perform her past relevant work as a job development specialist.  (R. 37.)  The ALJ thus concluded that Plaintiff had not been under a disability at any time from January 11, 2007, through the date of her decision.

## IV.  DISCUSSION

Plaintiff contends that the ALJ violated the Eleventh Circuit pain standard in finding the Plaintiff was not fully credible.  As part of her credibility finding, the ALJ concluded that Plaintiff's impairments could reasonably be expected to produce some of the alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the ALJ's determination of Plaintiff's residual functional capacity assessment.  In support of this conclusion the ALJ found that  Plaintiff's subjective allegations were inconsistent with the objective medical evidence.  (R. 37.)

Plaintiff argues that the ALJ failed to properly assess her credibility in light of her "exemplary work record."  Plaintiff argues that because she had a positive work record and a financial disincentive to retire and apply for disability benefits, the ALJ should

have accepted her testimony regarding the need for several breaks a day.  Plaintiff

argues that because the ALJ should have found her testimony regarding the need for 2-

3 additional breaks per day credible, this should have been included in the hypothetical

posed to the VE regarding whether Plaintiff is capable of performing past relevant work.

Plaintiff asks the Court to remand the case to the ALJ with instructions to reconsider

Plaintiff's credibility and to ask the VE if an individual could maintain employment if he

or she needed a 10-15 minute break 3-4 times per day  (Doc. 10.)

        In Hand v. Heckler, 761 F.2d 1545, 1549 (11th Cir. 1986), the Eleventh Circuit

adopted the following pain standard:

> There must be evidence of an underlying medical condition and (1) there
> must be objective medical evidence to confirm the severity of the alleged
> pain arising from the condition or (2) the objectively determined medical
> condition must be of a severity which can reasonably be expected to give
> rise to the alleged pain.

If the Commissioner rejects a claimant's allegations of pain, he must articulate explicit

and adequate reasons, and these reasons must be based on substantial evidence.

Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987).  A clearly articulated credibility

finding with substantial supporting evidence in the record should not be disturbed by a

reviewing court.  Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995); MacGregor v.

Bowen, 786 F.2d 1050, 1054 (11th Cir. 1986).

        The ALJ reviewed the evidence in the record and determined that it did not fully

support Plaintiff's subjective complaints.  In her decision, the ALJ articulated numerous

examples supporting her conclusion that Plaintiff's subjective complaints were not

credible.  For instance, there are three RFC evaluations in the record, conducted by

different experts but all coming to essentially the same conclusion regarding Plaintiff's

limitations–that she occasionally lift 20 pounds; frequently lift 10 pounds; and stand,

walk, or sit for about 6 hours in an 8-hour workday.  These are part of the RFC

determined by the ALJ and are consistent with the requirements of a Job Development

Specialist.  Furthermore, Dr. Adhami in July 2009 found 5/5 grip strength in Plaintiff's

hands, full range of motion, and negative Tinel's sign.  The ALJ also noted that Plaintiff

repeatedly declined offers of surgical intervention and felt that her wrist splints and

Motrin were helpful.

    The ALJ's determination that Plaintiff's subjective complaints were not credible is

further supported by Plaintiff's testimony regarding her activities of daily living, which

include driving, cooking, cleaning, and dressing herself as well as hobbies such as

singing, shopping, traveling, and reading.  Plaintiff also works periodically as an

examination proctor.  A plaintiff's daily activities may be considered in assessing pain.

Harwell v. Heckler, 735 F.2d 1292, 1293 (11th Cir. 1984).

    Also, Plaintiff's carpal tunnel syndrome has been treated conservatively with

wrist splints, physical therapy, and anti-inflammatory medications.  She was given a

zero percent disability rating and has consistently refused surgical intervention.

Conservative treatment for a particular condition tends to negate a claim of disabling

pain.  Wolfe v. Chater, 86 f.3d 1072, 1078 (11th Cir. 1996).

    The Court concludes that the ALJ's rejection of Plaintiff's subjective complaints

of pain was supported by substantial evidence and that the ALJ articulated specific

reasons for her credibility finding.  The ALJ's assessment of Plaintiff's residual functional capacity is supported by substantial evidence.  The ALJ determined that Plaintiff's RFC permitted performance of her past relevant work as a Job Development Specialist, and though not required to, also utilized VE testimony to confirm this determination.

The ALJ did not err in finding that Plaintiff was not disabled because the ALJ's assessment of Plaintiff's credibility and determination at step four that Plaintiff could perform past relevant work were supported by substantial evidence.

## V.  CONCLUSION

In view of the foregoing, it is hereby **ORDERED** that the decision of the Commissioner is **AFFIRMED**. The Clerk is directed to enter final judgment and close the file.

**ORDERED** in Gainesville, Florida, this 15th day December, 2011.

*s / Gary R. Jones*
GARY R. JONES
United States Magistrate Judge